1
2
3
4
5
6              **UNITED STATES DISTRICT COURT**
7                   **DISTRICT OF NEVADA**
8
9    WILLIE SAMPSON,                    )
                                        )
10              Petitioner,             )        3:11-cv-00019-LRH-WGC
                                        )
11   vs.                                )        **ORDER**
                                        )
12   JACK PALMER, *et al.*,             )
                                        )
13              Respondents.            )
     _____/
14
15          This action is a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, by a
16   Nevada state prisoner represented by counsel.  This matter comes before the Court on petitioner's
17   motion for reconsideration (ECF No. 78) and on the merits of the amended petition.
18   **I.  Procedural History**
19          **A.  Trial and Direct Appeal**
20          On March 25, 2002, petitioner was charged with first-degree kidnapping with the use of a
21   deadly weapon, two counts of lewdness with a minor under fourteen with the use of a deadly
22   weapon, attempted sexual assault with a minor under fourteen with the use of a deadly weapon,
23   sexual assault with a minor under fourteen with the use of a deadly weapon, and possession of a
24   firearm by an ex-felon.  (Exhibit 7).[1]  An amended information was filed on January 16, 2003,

25
26          [1] The exhibits referenced in this order are found in the Court's record at ECF Nos. 10-16
     (Exhibits 1-178) and ECF Nos. 45-46 (Exhibits 179-241).

containing the original charges and including the names of witnesses then known to the prosecution. (Exhibit 35).  A second amended information was filed on March 18, 2003, omitting count six, the felon in possession of a firearm charge.  (Exhibit 44).

On March 28, 2003, petitioner was convicted by a jury of all five counts, with the exception that the jury found that none of the crimes were committed with a deadly weapon.  (Exhibit 56).  On April 10, 2003, a third amended information was filed in open court charging petitioner with possession of a firearm by an ex-felon.  (Exhibit 59).  Petitioner agreed to plead guilty to that charge and a plea agreement was filed.  (Exhibit 60).  Thereafter, petitioner was sentenced on each count, accruing a term of life with the possibility of parole after twenty years on the sexual assault with a minor under fourteen (count five) as his harshest sentence, to run concurrent to the terms imposed for counts one through four.  (Exhibit 67).  The sentence on count six, felon in possession of a firearm, a term of twelve to forty-eight months, was to run consecutive to the other sentences *Id.*

Petitioner filed a direct appeal raising three claims for relief.  (Exhibit 68).  Petitioner's opening brief was filed on October 14, 2004.  (Exhibit 95).  On December 1, 2005, the Nevada Supreme Court affirmed petitioner's convictions.  (Exhibit 100).

**B. Post-Conviction State Habeas Review**

On October 11, 2006, petitioner filed his original state post-conviction petition for writ of habeas corpus.  (Exhibit 102).  Without holding an evidentiary hearing, the state district court denied the petition on January 8, 2007.  (Exhibit 105).  On appeal, by order filed October 31, 2007, the Nevada Supreme Court remanded the matter to the state district court for an evidentiary hearing to determine whether trial counsel's failure to include expert testimony on the victim's oppositional defiant disorder (ODD) prejudiced petitioner.  (Exhibit 126).  On remand and with the assistance of counsel, an evidentiary hearing on the petition was conducted on June 16, 2008.  (Exhibit 144). Following the evidentiary hearing, the petition was again denied.  (Exhibit 161).  On appeal, petitioner raised the claim that his trial counsel was ineffective for failing to present expert testimony

1  on the victim's oppositional defiant disorder.  (Exhibit 165).  The denial of the petition was affirmed

2  on December 10, 2010.  (Exhibit 171).  Remittitur issued on January 5, 2011.  (Exhibit 172).

3        On January 7, 2011, petitioner filed a second state post-conviction petition.  (Exhibit 174).

4  The state district court denied the petition on procedural grounds.  (Exhibit 202).  Petitioner

5  appealed, and the appeal was denied on October 5, 2011, when the Nevada Supreme Court

6  determined the petition was untimely, successive, and an abuse of the writ.  (Exhibit 214).  The

7  Nevada Supreme Court determined that petitioner could not make the requisite showing of cause and

8  prejudice to overcome the procedural bars.  *Id.*  Although the Nevada Supreme Court fully affirmed

9  the lower court's decision, it remanded the matter to permit the district court to correct a

10  typographical error.  *Id.*  Remittitur issued in that proceeding on November 1, 2011.  (Exhibit 215).

11  The state district court entered an amended judgment of conviction on December 30, 2011.  (Exhibit

12  224).

13        **C.  Federal Habeas Corpus Proceedings**

14        The federal proceedings were commenced when petitioner gave his original federal habeas

15  petition to prison officials for mailing on January 8, 2011.  (ECF No. 4).  A motion to dismiss that

16  petition was filed May 5, 2011.  (ECF. No. 9).  The motion was denied without prejudice and

17  counsel was appointed to assist the petitioner in preparing and filing an amended petition.  (ECF No.

18  33).  An amended petition was filed by petitioner's counsel on January 10, 2013.  (ECF. No. 44).

19  The amended petition raises the following grounds for relief:

20      I.     Sampson was denied his right to due process, to present a defense,
              to a fair trial, and to confront the witnesses against him under the

21             Fifth, Sixth, and Fourteenth Amendments to the United States
              Constitution when the court precluded the defense from

22             introducing evidence that the complainant suffered with a mental
              disorder that could adversely affect his ability to tell the truth.

23

24      II.    Sampson was denied his right to due process, to present a defense,
             and to a fair trial under the Fifth, Sixth and Fourteenth

25             Amendments to the United States Constitution when the court
             precluded expert testimony from Dr. Racoma that the complainant

26             had been diagnosed with a mental disorder that could adversely
             affect his ability to tell the truth.

III.  Sampson was denied his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth amendments to the United States Constitution when the prosecutor repeatedly elicited testimony that Sampson had invoked his constitutional right not to consent to a warrantless search.

IV.  Sampson was denied his right to due process and a fair trial under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution when a police officer testified that Sampson had invoked his constitutional rights to remain silent and to an attorney.

V.  Sampson was denied his right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution when his attorney failed to include Dr. Racoma as an expert witness at trial to testify about oppositional defiant disorder, that is characterized by lying.

VI.  Sampson was denied his due process and equal protection rights to a timely appeal and his right to the effective assistance of appellate counsel under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution when appellate counsel, flagrantly ignoring applicable rules and court orders, delayed over sixteen months without conferring with their client as to any aspect of the appeal before filing a brief, because of the public defender office's admitted incapacity to perform effective appellate legal work of its indigent clients.

(ECF No. 44).

Respondents moved to dismiss the amended petition, claiming that it is unauthorized because the petitioner has refused to sign the verification, that it contained duplicative claims, and that Ground Six is procedurally barred.  (ECF No. 53).  By order filed September 3, 2013, this Court granted the motion insofar as it dismissed Ground Two as duplicative, but required respondents to address the claim that petitioner was denied a fair trial because he was prevented from presenting the expert testimony of Dr. Racoma, as part of Ground One.  (ECF No. 67).  The Court dismissed Ground Six as procedurally barred.  (*Id.*).  The Court allowed the remaining grounds of the amended petition to proceed and directed respondents to file an answer to the remaining grounds.  (*Id.*).

On November 25, 2013, petitioner filed a *pro se* notice of appeal.  (ECF No. 75).  This Court previously instructed petitioner not to file *pro se* documents because he is represented by counsel. On October 22, 2013, this Court ordered the Clerk of Court not to accept any further *pro se*

4

1    documents from petitioner in this action.  (ECF No. 74).  On January 15, 2014, the Ninth Circuit

2    Court of Appeals dismissed the *pro se* appeal for lack of jurisdiction.  (ECF No. 84).

3          On November 26, 2013, respondents filed an answer to Grounds 1, 3, 4, and 5 of the

4    amended petition.  (ECF No. 77).  On December 10, 2013, through counsel, petitioner filed a motion

5    for reconsideration of the order finding Ground Six of the amended petition procedurally barred.

6    (ECF No. 78).  Respondents opposed petitioner's motion.  (ECF No. 79).  Petitioner did not file a

7    reply regarding the motion for reconsideration.  Petitioner did file a reply to the answer.  (ECF No.

8    85).

9    **II.  Petitioner's Motion for Reconsideration (ECF No. 78)**

10         On December 10, 2013, petitioner filed a motion for reconsideration of this Court's finding

11   that Ground Six of the amended petition is procedurally barred.  (ECF No. 78).  Petitioner bases the

12   motion for reconsideration on an intervening change in controlling law, specifically, the Ninth

13   Circuit's opinion in *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013), which was filed on December 4,

14   2013.

15         **A.  Court's Prior Ruling that Ground Six is Procedurally Barred**

16         In Ground Six, petitioner alleges the ineffective assistance of appellate counsel.  (ECF No.

17   44, at pp. 44-52).  In the motion to dismiss, respondents argued that Ground Six of the amended

18   petition was procedurally defaulted in the state courts because it was raised for the first time in the

19   second post-conviction proceedings and those proceedings were terminated on procedural grounds as

20   untimely, abuse of the writ, and laches.  (Exhibit 214).

21         Petitioner did not dispute that the Nevada Supreme Court found the claim in Ground Six to

22   be procedurally defaulted.  Petitioner made no challenge to the adequacy or independence of the

23   Nevada Supreme Court's application of the procedural default rules.  Rather, petitioner argued that

24   he could show cause to overcome the procedural default.  He contended that his court-appointed

25   post-conviction counsel acted ineffectively in representing him.  Petitioner argued that under the

26   United States Supreme Court's recent decision in *Martinez v. Ryan*, 132 S.Ct. 130 (2012), because of

1    the ineffective representation of his post-conviction counsel, the procedural bar to Ground Six can be

2    overcome.

3         In the order filed September 3, 2013, this Court noted that, under the holding of *Martinez v.*

4    *Ryan,* 132 S.Ct. 1309 (2012), failure of a court to appoint counsel, or the ineffective assistance of

5    counsel in a state post-conviction proceeding may establish cause to overcome a procedural default

6    in specific, narrowly defined circumstances.  Although reaffirming the general holding of *Coleman*,

7    "that an attorney's *negligence* in a postconviction proceedings does not establish cause" in all *other*

8    circumstances, the United States Supreme Court determined that a narrowly carved exception – an

9    equitable rule – must be established.  *Martinez,* 132 S.Ct. at 1320 (quoting *Coleman*, 501 U.S. at

10    753) (emphasis added).  The Court in *Martinez* held:

11           Where, under state law, claims of ineffective assistance of *trial*
              *counsel* must be raised in an initial-review collateral proceeding, a

12           procedural default will not bar a federal habeas court from hearing a
              substantial claim of ineffective assistance at trial if, in the

13           initial-review collateral proceeding, there was no counsel or counsel
              in that proceeding was ineffective.

14

15    132 S.Ct. 1320 (emphasis added).  The Court specifically determined that this new rule does not

16    "extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to

17    raise a claim of ineffective assistance at trial."  *Id.*

18         Petitioner previously argued that *Martinez* should be expanded to cover not only claims of

19    ineffective assistance of trial counsel, but also claims of ineffective assistance of appellate counsel,

20    relying on Justice Scalia's dissent, where he recognized that claims such as petitioner's Ground Six

21    would fall within the majority's rationale for the exception, i.e., that post-conviction is the first

22    instance where any claims of ineffective counsel can be raised, including claims related to the

23    performance of appellate counsel.  *See Martinez*, 132 S.Ct. at 1321 (Scalia, J., dissenting).  This

24    Court rejected petitioner's invitation to expand the holding of *Martinez*, as follows:

25           The United States Supreme Court was explicit in its holding that the
              exception allowed to *Martinez* was a narrow exception which applied

26           only to procedurally defaulted claims of ineffective assistance of *trial*

1    counsel. *Id.* at 1320. Given that explication, it is not within this
2    Court's purview to expand the exception here. Thus, the performance
     of post-conviction counsel as it relates to claims of ineffective
3    appellate counsel do not fall within the *Martinez* exception.

4    (ECF No. 67, at p. 10) (footnote omitted).

5    **B. Analysis on Reconsideration**

6    In the motion for reconsideration, petitioner argues that the Ninth Circuit's recent opinion of

7    *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013) constitutes an intervening change in the law and

8    justifies reconsideration of this Court's decision that Ground Six of the petition is procedurally

9    barred. In *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013), the Ninth Circuit expanded the holding of

10   *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), to include claims of ineffective assistance of appellate

11   counsel. "We therefore conclude that the *Martinez* standard for 'cause' applies to all Sixth

12   Amendment ineffective-assistance claims, *both trial and appellate*, that have been procedurally

13   defaulted by ineffective counsel in the initial-review state-court collateral proceeding." *Nguyen,* 736

14   F.3d at 1295 (emphasis added).

15   Respondents argue that the *Nguyen* case is not yet final because a petition for rehearing has

16   been filed and the Ninth Circuit Court of Appeals has not yet issued mandate in the case.[2] However,

17   this Court rejects respondents' argument that the *Nguyen* decision is not final. This Court construes

18   the Ninth Circuit's published opinion in *Nguyen v. Curry*, 736 F.3d 1287 (9th Cir. 2013) as authority

19   that shall be relied upon until, and unless, the Ninth Circuit modifies or vacates that opinion.

20   Respondents also argue that the *Nguyen* court's application of *Martinez* to claims of

21   ineffective assistance of appellate counsel conflicts with the case law of other United States Circuit

22   Courts. *See, e.g., Ibarra v. Thaler*, 687 F.3d 222, 224 (5th Cir. 2012); *Dansby v. Hobbs*, 691 F.3d

23

24   ───────────────────
     [2] A review of the Ninth Circuit's docket in *Nguyen v. Curry*, Case No. 11-56792, indicates that,
     with the Ninth Circuit Court's permission, a petition for rehearing en banc was filed on January 16,
25   2014, by appellee Curry. (Appellate Docket #40). On March 13, 2014, appellant Nguyen filed a
     response to the petition for rehearing en banc. (Appellate Docket # 44). Additionally, amicus curiae
26   briefs have been filed. (Appellate Docket #45, 48, 50). To date, the Ninth Circuit Court of Appeals has
     not issued mandate in the appeal, nor has it issued a ruling on the petition for rehearing en banc.

1  934, 937 (8th Cir. 2012); *Banks v. Workman*, 692 F.3d 1133, 1148 (10th Cir. 2012).  Respondents

2  further contend that the *Nguyen* decision creates an intra-circuit split of authority, because other

3  Ninth Circuit published opinions have rejected expanding the holding of *Martinez* to claims of

4  ineffective assistance of appellate counsel.  *See Hunton v. Sinclair*, 732 F.3d 1124 (9th Cir. 2013); *see*

5  *also McKinney v. Ryan*, 730 F.3d 903, 913 (9th Cir. 2013).  The fact that the *Nguyen* decision may

6  create an inter-circuit split of authority, or even an intra-circuit split of authority, does not prevent

7  this Court from applying *Nguyen* to the case at bar.  Giving petitioner the benefit of the doubt, this

8  Court will entertain petitioner's argument that he can establish cause and prejudice to excuse his

9  procedural default of Ground Six, his claim of ineffective assistance of appellate counsel, under the

10  recent holding of *Nguyen,* 736 F.3d at 1295.

11  **1.  Cause and Prejudice Standards after *Martinez***

12  Where the underlying claim is one of ineffective assistance of appellate counsel, pursuant to

13  the holding in *Nguyen,* 736 F.3d at 1295, petitioner must still establish cause and prejudice to

14  overcome his procedural default with respect to Ground Six under the test established in *Martinez*.

15  In *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), the United States Supreme Court described the

16  *Martinez* test as consisting of four requirements or prongs:

> We consequently read *Coleman* as containing an exception, allowing a
> federal habeas court to find "cause," thereby excusing a defendant's
> procedural default, where (1) the claim of "ineffective assistance of
> trial counsel was a "substantial" claim; (2) the "cause" consisted of
> there being "no counsel" or only "ineffective" counsel during the state
> collateral review proceeding; (3) the state collateral review proceeding
> was the "initial" review proceeding in respect to the "ineffective-
> assistance-of-trial-counsel claim;" and (4) state law requires that an
> "ineffective assistance of trial counsel [claim] . . . be raised in an
> initial-review collateral proceeding."

23  *Trevino v. Thaler*, 133 S.Ct. 1918 (citing and quoting *Martinez*, 132 S.Ct. at 1318-19, 1320-21).  The

24  United States Supreme Court has defined "substantial" as a claim that "has some merit."  *Martinez*,

25  132 S.Ct. at 1318 (comparing the standard for certificates of appealability from *Miller-El v. Cockrell*,

8

1    537 U.S. 322 (2003)).  Stated inversely, a claim is "insubstantial" if "it does not have any merit or ...

2    is wholly without factual support." *Martinez*, 132 S.Ct. at 1319.

3    Determining whether a claim is "substantial" under the first prong of the *Martinez* test

4    requires a federal district court to examine both the deficient performance and prejudice prongs of an

5    ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984).  As to

6    deficient performance, *Strickland* emphasizes that there is a strong presumption that a trial attorney

7    performed within the wide range of professional competence; the attorney's performance will be

8    deemed deficient only if it fell below an objective standard of reasonableness measured under

9    prevailing professional norms.  *Strickland*, 466 U.S. at 689-90.  The *Strickland* Court outlined how

10   to assess deficient performance in a failure to investigate claim, as follows:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments.

17   *Strickland*, 466 U.S. at 690-91.  *Strickland* cautions courts to remember that "[t]here are countless

18   ways to provide effective assistance in any given case."  *Id.* at 689.  Prejudice under *Strickland*

19   means that "there is a reasonable probability that, but for counsel's unprofessional errors, the result

20   of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one "sufficient

21   to undermine confidence in the outcome."  *Id.*

22   These standards from *Strickland* for determining deficient performance and prejudice are also

23   the standards for an eventual review of the merits of the ineffective assistance of counsel claim.

24   However, the first *Martinez* prong is not the same as a full merits review, but, as the *Martinez* Court

25   explained, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining

26   whether a certificate of appealability should issue.  *See Martinez*, 132 S.Ct. at 1318-19 (citing *Miller-*

9

1    *El v. Cockrell*, 537 U.S. 322 (2003)).  Thus, the first prong of *Martinez* requires the district court to

2    *review* but not *determine* whether trial counsel's acts or omissions resulted in deficient performance

3    and in a reasonable probability of prejudice, and to determine only whether resolution of the merits

4    of the claim would be debatable among jurists of reason and whether the issues are deserving enough

5    to encourage further pursuit of them.

6        The second necessary prong of *Martinez* requires a showing that petitioner had no counsel on

7    initial post conviction review (PCR), or that PCR counsel was "ineffective under the standards of

8    *Strickland*."  *Martinez*, 132 S.Ct. at 1318; *see also Trevino*, 133 S.Ct. at 1918.  "Ineffectiveness" is a

9    term defined by *Strickland* as deficient performance and a reasonable probability of prejudice caused

10   by the deficient performance.  466 U.S. at 694, 700.  Not just any error or omission of counsel will

11   be deemed "deficient performance" that will satisfy *Martinez*; if the PCR "attorney in the initial-

12   review collateral proceeding did not perform below constitutional standards," the PCR attorney's

13   performance does not constitute "cause."  *Martinez*, 132 S.Ct. at 1319.  The *Strickland* standards for

14   analyzing deficient performance apply with equal force to PCR counsel.  When determining PCR

15   counsel's performance, this Court looks to analogous law applying *Strickland* to direct appeal

16   counsel, because like direct appeal counsel, PCR counsel is charged with raising and pursuing claims

17   arising from a criminal trial.  These standards include the rule that "effective legal assistance" does

18   not mean that appellate counsel must appeal every question of law or every nonfrivolous issue

19   requested by a criminal defendant.  *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).  Instead,

20   "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing

21   out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few

22   key issues."  *Id.* at 751-52.  And given appellate counsel's wide discretion in exercising professional

23   judgment, the presumption of effective assistance of counsel can ordinarily be overcome "only when

24   ignored issues are *clearly stronger* than those presented . . . ."  *Smith v. Robbins*, 528 U.S. 259, 288

25   (2000) (quoting *Gray v. Greer*, F.2d 644, 646 (9th Cir. 1985) (emphasis added)).

26   ///

1

### 2. Petitioner's Underlying Claim of Ineffective Assistance of Appellate Counsel is Not "Substantial"

2

3        In Ground Six of the amended federal petition, petitioner asserts that his counsel on direct

4 appeal was constitutionally ineffective.  (ECF No. 44, at pp. 44-52).  Petitioner asserts that this claim

5 is "substantial" based on the following:

6                  Sampson alleged in Ground Six, in part, that appellate counsel was ineffective for failing to submit any affidavits in support of the motion

7                  to withdraw the guilty plea.  (CR 14).  As outlined in detail in the amended petition, Sampson demonstrated a substantial showing of the

8                  denial of a constitutional right on each of the grounds discussed herein. His appellate attorney's conduct on appeal was outlandish as he

9                  fragrantly missed deadlines and essentially abandoned Sampson as a client.  These actions deprived Sampson of his right to a timely appeal

10               and prevented Sampson from having his appellate counsel address the trial transcript inaccuracies.  Under Martinez, he has demonstrated

11               good cause to overcome any procedural default as to these grounds in the amended petition.

12

13 (ECF No. 64, at p. 9, Petitioner's Opposition to Motion to Dismiss).  While petitioner asserts that

14 appellate counsel missed multiple briefing deadlines and failed to regularly communicate with him

15 due to then-overwhelming workloads within the Public Defender's Appeal Unit (see ECF No. 44, at

16 pp. 44-48), petitioner also acknowledges that counsel eventually filed an opening brief on October

17 14, 2004 (*Id.*, at p. 47; Exhibit 95).  The opening brief filed by appellate counsel is 43 pages in length

18 and raises three claims, all of which petitioner has continued to pursue in this federal habeas

19 proceeding.  (Exhibit 95; ECF No. 44).  While appellate counsel's delays in filing the appellate brief

20 were unfortunate, petitioner has not asserted facts to show that, given counsel's overwhelming

21 workload, the brief could have been filed any sooner.  *See Strickland*, 466 U.S. at 689 ("A fair

22 assessment of attorney performance requires that every effort be made to eliminate the distorting

23 effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

24 evaluate the conduct from counsel's perspective at the time.").  When a petitioner's attorney misses a

25 filing deadline, the petitioner cannot rely on that to establish cause.  *See Coleman*, 501 U.S. at

26 753–54.  Given appellate counsel's eventual fulfillment of his basic duty – to file an opening brief on

petitioner's behalf, and petitioner's apparent satisfaction with the quality of the opening brief, Ground Six is not a "substantial" claim of ineffective assistance of counsel that "deserve[s] encouragement to proceed further" on the issue of deficient performance. *See Miller-El*, 537 U.S. at 336.

Petitioner's ineffective assistance of appellate counsel claim is also undeserving of further encouragement on the issue of prejudice. Petitioner acknowledges that a notice of appeal was timely filed in his case. (ECF No. 44, at p. 44). Petitioner provides no argument or facts to show how the outcome of the appeal may have been different had appellate counsel filed the opening brief sooner. Petitioner does not identify what inaccuracies, if any, he found in the trial transcripts, or show that such inaccuracies might have altered the outcome of his direct appeal. Petitioner's prejudice arguments lack merit and are insufficient to show that his ineffective assistance of appellate counsel claim is "substantial," in order to meet the first prong of the *Martinez* cause and prejudice standard.

### 3. Petitioner Has Not Shown that PCR Counsel's Performance Was Deficient Under *Strickland*

Pursuant to the second prong of the *Martinez* cause and prejudice test, petitioner must demonstrate "cause" for his procedural default by showing either that he had no PCR counsel, or that PCR counsel was ineffective under *Strickland*. *See Martinez*, 132 S.Ct. at 1312. Petitioner argues that he was not provided with counsel prior to the denial of his first state post-conviction habeas proceeding, and that constitutes "*per se* cause" to excuse his procedural default. (ECF No. 64, at p. 8). However, petitioner also acknowledges that attorney Christopher Oram was appointed to represent him in his post-conviction proceedings after the Nevada Supreme Court remanded his state post-conviction petition to the state district court for an evidentiary hearing. (ECF No. 64, at p. 8; ECF No. 44, at p. 15; Exhibit 139). Attorney Oram was therefore petitioner's PCR counsel.

The record shows that after being appointed to represent petitioner on February 6, 2008, attorney Oram represented petitioner at the evidentiary hearing concerning his post-conviction state habeas claim that trial counsel was ineffective for failing to present Dr. Racoma's expert testimony

1    regarding the victim having oppositional defiant disorder.  (Exhibit 144).  After the conclusion of the

2    evidentiary hearing, attorney Oram filed a supplemental brief raising the ineffective assistance of

3    trial counsel claim explored at the evidentiary hearing.  (Exhibit 148).  Attorney Oram's brief did not

4    raise petitioner's defaulted ineffective assistance of appellate counsel claim.  (*Id.*).

5            The cause analysis must focus on the *Strickland* standard regarding the facts and

6    circumstances of PCR counsel's (Oram's) representation.  Petitioner must overcome the "strong

7    presumption" that PCR counsel's decision to raise the ineffective assistance of trial counsel claim

8    and not raise the defaulted claim of ineffective assistance of appellate counsel was within the "wide

9    range of professional competence" as described in *Strickland*.  As discussed earlier, appellate and

10   post-conviction counsel do not have a constitutional duty to raise every nonfrivolous issue requested

11   by a defendant, "but rather may select from among them in order to maximize the likelihood of

12   success on appeal."  *Robbins*, 528 U.S. at 288.  Petitioner does not assert that he discussed Ground

13   Six with PCR counsel Oram at any time, and petitioner has not shown that Ground Six was "clearly

14   stronger" than the ineffective assistance of trial counsel claim raised by PCR counsel Oram.  *See*

15   *Robbins*, 528 U.S. at 288.  The mere fact that PCR counsel Oram did not also raise an ineffective

16   assistance of appellate counsel claim, as is presented in Ground Six of the amended federal petition,

17   does not, without more, establish that his performance was deficient.  *See Robbins*, 528 U.S. at 288

18   (direct appeal counsel does not have a constitutional duty to raise every nonfrivolous issue, even if

19   requested by defendant); *see also Murray v. Carrier*, 477 U.S. at 486-87 ("[T]he mere fact that

20   counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite

21   recognizing it, does not constitute cause for procedural default.").  Rather, *Strickland* requires that

22   Oram's representation be analyzed with a "strong presumption" that it satisfied constitutional norms.

23   *See Strickland*, 466 U.S. at 689.  Petitioner has not alleged facts which, if true, would establish that

24   PCR counsel Oram's actions fell below an objective standard of reasonableness measured under

25   prevailing professional norms.

26   ///

13

1    Additionally, petitioner has not shown that he was prejudiced by PCR counsel Oram's

2   representation.  Prejudice under *Strickland* means that "there is a reasonable probability that, but for

3   counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

4   A reasonable probability is one "sufficient to undermine confidence in the outcome."  *Id.*  In this

5   case, petitioner has not shown a reasonable probability of prevailing on his defaulted ineffective

6   assistance of appellate counsel claim.  As such, petitioner has failed to show that he was prejudiced

7   by PCR counsel's failure to raise the ineffective assistance of appeal counsel claim in his state post-

8   conviction habeas proceedings.

9       **C.  Petitioner Fails to Show Cause and Prejudice to Excuse the Procedural Default of Ground Six**

10

11    This Court has considered petitioner's argument that he can establish cause and prejudice

12   under *Martinez v. Ryan,* 132 S.Ct. 1309 (2012) to excuse his procedural default of Ground Six, his

13   claim of ineffective assistance of counsel, as allowed under the recent case of *Nguyen v. Curry*, 736

14   F.3d 1287 (9th Cir. 2013).  In summary, petitioner has failed to show that his ineffective assistance of

15   appellate counsel claim in Ground Six of the amended petition is "substantial," in order to meet the

16   first prong of the *Martinez* cause and prejudice standard.  Petitioner also has not met the second

17   prong of the *Martinez* cause and prejudice standard, because he failed to show that PCR counsel's

18   performance was deficient and resulted in prejudice under *Strickland*.  Petitioner has failed to assert

19   facts that, if true, would establish cause and prejudice to excuse his procedural default of Ground

20   Six.  *See Trevino v. Thaler*, 133 S.Ct. 1911, 1918 (2013); *Martinez*, 132 S.Ct. at 1318-21; *Nguyen*,

21   726 F.3d at 1293.  Accordingly, the Court denies petitioner's motion for reconsideration of this

22   Court's prior ruling that Ground Six of the amended petition is procedurally barred.  Ground Six of

23   the amended petition remains dismissed with prejudice as procedurally barred.

24   **III.  Federal Habeas Corpus Standards**

25    The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

26   provides the legal standard for the Court's consideration of this habeas petition:

14

1

2

3

4

5

6

7

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8       The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications

9   in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

10  to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002).  A state court

11  decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C.

12  § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme

13  Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from

14  a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme

15  Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529

16  U.S. 362, 405-406 (2000) and citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).  The formidable

17  standard set forth in section 2254(d) reflects the view that habeas corpus is "'a guard against extreme

18  malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction

19  through appeal." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011) (quoting

20  *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

21       A state court decision is an unreasonable application of clearly established Supreme Court

22  precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

23  governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

24  principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,

25  529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more

26  than merely incorrect or erroneous; the state court's application of clearly established federal law

must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).  In determining whether a state court decision is contrary to, or an unreasonable application of federal law, this Court looks to the state courts' last reasoned decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

In a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the burden set in § 2254(d) and (e) on the record that was before the state court.  *Cullen v. Pinholster*, 131 S.Ct. 1388, 1400 (2011).

## IV.  Discussion of Remaining Grounds of Amended Petition

### A.  Ground One

Petitioner asserts that his constitutional rights were violated when the trial court precluded the defense from introducing evidence that the victim suffered from Oppositional Defiant Disorder (ODD), including expert testimony from Dr. Racoma.  (ECF No. 44, at pp. 20-28).  The Nevada Supreme Court denied this claim on direct appeal, as follows:

> Sampson argues that the district court erred by refusing to allow him to call Dr. Racoma to testify regarding the fact that the victim was diagnosed with ODD.  The district court has discretion to determine the admissibility of expert testimony, and we review this decision for a clear abuse of discretion.
>
> Under NRS 174.234(1)(a), both defense counsel and the prosecution must submit to each other, at least five days prior to trial, written notice of all witnesses they intend to call.  Further, under NRS 174.234(2), written notice of expert witnesses must be filed and served upon the opposition at least twenty-one days before trial.  Pursuant to NRS 174.295(2), the remedy for a violation of the discovery provisions of NRS 174.234 is that the district court "may order the party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances."

16

1

2

When addressing discovery violations, the district court must be cognizant that defendants have the constitutional right to discredit their accuser, and this right "can be but limitedly circumscribed." Therefore, to protect this constitutional right, there is a strong presumption to allow the testimony of even a late-disclosed witness, and evidence should be admitted when it goes to the heart of the case. However, the district court must also balance this right against "not only the waste of judicial time factor . . . but must take particular care not to permit annoying, harassing, humiliating and purely prejudicial attacks unrelated to credibility."

3

4

5

6

7

We agree with Sampson that the testimony he sought to admit would have been helpful to his defense. However, the district court did not abuse its discretion when it denied Sampson the right to call Dr. Racoma. Sampson had access to the victim's school records prior to trial, but Sampson's counsel states that because the writing in the school records was unclear, he believed that the doctor's name was "Dr. Raconia" instead of "Dr. Racoma." Thus, he argues that there was no delay in disclosing Dr. Racoma as an expert witness because he did not find out that the report was actually referring to Dr. Racoma until the eighth day of trial.

8

9

10

11

12

We find this assertion unpersuasive. Although Dr. Racoma's name was spelled incorrectly, it nonetheless would not have been difficult for Sampson's counsel to locate Dr. Racoma based on these records. Also, even if Sampson's counsel could not locate Dr. Racoma, he could have brought in evidence of the victim's diagnosis of ODD in other ways. Most clearly, Sampson's counsel could have used the school records to question the victim's mother regarding the ODD diagnosis.

13

14

15

16

17

Further, if the State did not anticipate this witness and had Dr. Racoma's testimony been allowed, it would have resulted in an unfair surprise to the State. Fairness during trial is not one-sided and applies to both the defendant and the State. The fault herein lies not with the district court, but instead with Sampson's attorney, who inexplicably failed to present the evidence contained in the school records or timely pursue the testimony of Dr. Racoma. Thus, the district court did not abuse its discretion by denying Sampson's request for introduce Dr. Racoma.

18

19

20

21

22

(Exhibit 100, at pp. 8-10) (footnotes omitted)).

23

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a

24

complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986); *see also Moses v. Payne*, 555 F.3d

25

742, 757 (9th Cir. 2009). "The Supreme Court has indicated that a defendant's right to present a

26

defense stems from the right to due process provided by the Fourteenth Amendment . . . and from the

1  right to have compulsory process for obtaining witnesses in his favor provided by the Sixth

2  Amendment." *Moses*, 555 F.3d at 757 (internal quotation and citation omitted).  Nevertheless, "'[a]

3  defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable

4  restrictions,' such as evidentiary and procedural rules." *Moses*, 555 F.3d at 757 (quoting *United

5  States v. Scheffer*, 523 U.S. 303, 308 (1998)).  When evidence is excluded on the basis of a valid

6  application of a state evidentiary rule, such exclusion may violate due process if the evidence is

7  sufficiently reliable and crucial to the defense.  *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

8  In general, however, there must be "unusually compelling circumstances . . . to outweigh the strong

9  state interest in administration of its trials."  *Perry v. Rushen*, 713 F.2d 1447, 1452 (9th Cir. 1983).

10      In determining whether the exclusion of evidence pursuant to state evidentiary law violates

11  federal due process and the right to present a defense, the Ninth Circuit has, in the past, applied a

12  balancing test, considering these factors: (1) the probative value of the excluded evidence on the

13  central issue; (2) its reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether

14  it is the sole evidence on the issue or merely cumulative; and (5) whether it constitutes a major part

15  of the attempted defense.  *See Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985), *amended on other

16  grounds by* 768 F.2d 1090 (9th Cir. 1985); *Chia v. Cambra*, 360 F.3d 997, 1004 (9th Cir. 2004).

17      More recently, however, in *Moses v. Payne*, the Ninth Circuit questioned the current

18  applicability of the *Miller* balancing test under the AEDPA.  *Moses*, 555 F.3d at 758.  In *Moses*, the

19  Ninth Circuit noted that the question before it was not an issue of whether a state evidentiary rule, by

20  its own terms, impinged upon a defendant's constitutional rights; rather, the issue was whether a trial

21  court's discretionary determination to exclude evidence violated a defendant's constitutional rights.

22  *Moses*, 55 F.3d at 758-60.  The *Moses* court concluded that "because the *Miller* balancing test is a

23  creation of circuit law, rather than a [United States] Supreme Court holding," a state court's failure

24  to employ *Miller* did not necessarily warrant habeas relief.  *Moses*, 555 F.3d at 759-60.  Rather,

25  under the AEDPA, the question was whether the state court's decision was "contrary to or an

26  unreasonable application of the Supreme Court precedent that *Miller* interpreted."  *Id.* (citing 28

1    U.S.C. § 2254(d) and *Carey v. Musladin*, 549 U.S. 70, 76-77 (2006)).  The Ninth Circuit went on to

2    find that "[b]ecause the Supreme Court's precedents do not establish a principle for evaluating

3    discretionary decisions to exclude the kind of evidence at issue here, AEDPA does not permit us to

4    rely on our [*Miller*] balancing test to conclude that a state trial court's exclusion of evidence [under a

5    state evidentiary rule] violated clearly established Supreme Court precedent."  *Moses*, 555 F.3d at

6    760.  Finally, where a state court erred under federal law in excluding evidence, a petitioner must

7    still show that such error was prejudicial under the federal harmless error standard by demonstrating

8    that the error "had a substantial and injurious effect or influence in determining the jury's verdict."

9    *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

10          To the extent that petitioner asserts that his right to "confront the witnesses against him" was

11   violated when the trial court excluded evidence concerning the victim's mental health (ECF No. 44,

12   at p. 20), he fails to state a claim upon which relief can be granted.  Under the Sixth Amendment's

13   Confrontation Clause, "[i]n all criminal proceedings, the accused shall enjoy the right . . . to be

14   confronted with the witnesses against him . . . ."  U.S. Const. Amend. VI.  A Confrontation Clause

15   issue is typically presented when evidence is admitted at trial against a defendant.  *See, e.g.,*

16   *Crawford v. Washington*, 541 U.S. 36, 68 (2004) (holding that Confrontation Clause bars

17   introduction of "testimonial" statements by a witness that implicates defendant unless the witness

18   testifies at trial and is subject to cross examination or the witness is unavailable and defendant had a

19   prior opportunity to cross examine the witness).  Where testimony from a defendant's expert witness

20   is excluded at trial, the issue is properly analyzed in light of a defendant's constitutional right to

21   present relevant evidence in his own defense.  *See Moses v. Payne*, 555 F.3d at 754-60

22   (distinguishing between analysis of admission of evidence in violation of Confrontation Clause and

23   analysis of exclusion of evidence in violation of right to present a defense).  In the instant case, the

24   defense sought to introduce evidence of the victim's mental health problems through the testimony

25   of Dr. Racoma, but the trial court denied this request because the defense had failed to disclose that

26   Dr. Racoma would be called as an expert witness until the eighth day of trial.  (*See* Exhibit 100, at

pp. 9-10).  Consequently, no "testimonial" statement from Dr. Racoma or any other witness, is at issue here and petitioner has failed to state a claim that his Confrontation Clause rights have been violated.  *Cf. Crawford*, 541 U.S. at 68; *Moses*, 555 F.3d at 754-60.

The Nevada Supreme Court upheld the trial court's decision to exclude Dr. Racoma's testimony because petitioner failed to disclose Dr. Racoma as an expert witness as required by Nevada's evidentiary rules.  (Exhibit 100, at p. 8) (citing NRS 174.234(1)(a); NRS 174.234(2)).  The trial court sustained the State's objections to defense counsel's questions concerning the victim's mental health problems because the questions had been asked and answered, or had mischaracterized the evidence presented at trial.  (Exhibit 49, at pp. 60-61; Exhibit 50, at pp. 151-52).  Petitioner does not challenge the legality of the state evidentiary rules, but argues that the trial court erred in excluding the testimony at issue.  (ECF No. 44, at pp. 21-24).  Thus, petitioner's argument is best interpreted as a challenge to the trial court's exercise of discretion in this case to exclude the testimony.  As such, petitioner's claim fails under *Moses*, because "the Supreme Court's cases have focused only on whether an evidentiary rule, by its own terms, violated a defendant's constitutional right to present evidence.  These cases do not squarely address whether a court's exercise of discretion to exclude expert testimony violates a criminal defendant's constitutional right to present relevant evidence."  *Moses*, 555 F.3d at 759 (citing *Wright v. Van Patten*, 128 S.Ct. 743, 746 (2008)).  The Nevada Supreme Court's determination that the trial court did not violate petitioner's constitutional rights is not contrary to or an unreasonable application of clearly established United States Supreme Court precedent.

The trial court exercised its discretion and excluded Dr. Racoma's testimony because the defense failed to disclose him as an expert witness until the eighth day of trial.  Petitioner does not dispute that the defense failed to provide proper notice that Dr. Racoma would be testifying as an expert witness, nor does he challenge the legality of Nevada's evidentiary rule that allows the trial court to preclude such testimony.  (*See* ECF No. 44, at p. 24) (asserting only that "[t]here was no

1    justification for its preclusion.").  Thus, the trial court's decision to exclude Dr. Racoma's testimony

2    on the basis of Nevada's evidentiary rules is unchallenged.

3         Even if the Court were to determine that the trial court's exclusion of Dr. Racoma's

4    testimony was a constitutional error, relief is unwarranted unless the error "had a substantial and

5    injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 637.  The burden

6    of demonstrating that error resulted in actual prejudice lies with the habeas petitioner.  *Id.*  As the

7    Nevada Supreme Court observed in its affirmance on direct appeal, petitioner could have located Dr.

8    Racoma with reasonable efforts or introduced evidence of the victim's mental health problems by

9    confronting the victim's mother with school records of the victim's diagnosis.  (Exhibit 100, at p.

10   10).  Additionally, Dr. Racoma testified during the subsequent post-conviction evidentiary hearing

11   that he never observed the victim to be untruthful (Exhibit 144, at p. 24), that the purpose of his

12   visits with the victim had nothing to do with whether the victim was truthful (*id.*), that he would not

13   opine whether the victim had lied in this case (*id.* at p. 50), and that he had never encountered a

14   person with ODD to have fabricated an instance of sexual assault (*id.* at p. 51).

15        The Nevada Supreme Court correctly determined that while the victim's testimony was not

16   without inconsistencies, much of the testimony was corroborated by evidence found in petitioner's

17   home.  (Exhibit 171, at p. 2; Exhibit 52, at p. 92 (listing physical evidence corroborating the victim's

18   testimony)).  Further, the jury was informed that the victim was on medication for behavioral issues,

19   and defense counsel was permitted to ask a doctor whether ODD could have affected the victim's

20   truthfulness.  (Exhibit 49, at pp. 60-61) (victim's mother testifying as to victim's behavior issues and

21   medication); Exhibit 50, at p. 151 (Dr. Vergara responding to questions posed by the defense).  For

22   all of these reasons, any alleged error in excluding the testimony of Dr. Racoma did not have a

23   substantial and injurious effect on the jury's verdict.  Petitioner has failed to meet his burden of

24   proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable

25   application of, clearly established federal law, as determined by the United States Supreme Court, or

26   that the ruling was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.  This Court denies federal habeas relief on Ground One of

the amended petition.

**B.  Ground Three**

Petitioner asserts that his rights to due process and a fair trial were violated when police

officers testified concerning his refusal to consent to a warrantless search of his home.  (ECF No. 44,

at pp. 33-36).  The Nevada Supreme Court rejected this claim, as follows:

> Sampson argues that the district court erred by permitting the State to
> present testimony that discussed Sampson's invocation of his Fourth
> Amendment right to refuse to consent to a search of his residence.  The
> testimony at issue was elicited by the State from two LVMPD officers
> who testified that they asked Sampson if they could enter his residence
> to retrieve the victim's clothing, and Sampson replied that he did not
> want them to enter his home.  Sampson did not object to this testimony
> and therefore has the burden of establishing that plain error affecting
> his substantial rights occurred.  We conclude that he fails to do so.
>
> Whether it is constitutional error for a prosecutor to elicit testimony or
> comment on a defendant's refusal to consent to a warrantless search to
> support an inference of guilt is an issue of first impression in Nevada.
> This proposition has been assumed by many courts, and today we
> adopt this rule in Nevada.  As one court has stated, "[A]n individual
> should be able to invoke his Fourth Amendment rights without having
> his refusal used against him at trial."
>
> Courts addressing this issue recognize that there are similarities
> between exercising Fourth Amendment rights and exercising other
> constitutional rights, and they determine that it is improper for the
> State to effectively punish a defendant for asserting her constitutional
> rights.  One court has stated, "[j]ust as a criminal suspect may validly
> invoke his Fifth Amendment privilege in an effort to shield himself
> from criminal liability, so one may withhold consent to a warrantless
> search, even though one's purpose be to conceal evidence of
> wrongdoing."
>
> This court has previously addressed references made during trial to a
> defendant's exercise of her Fifth Amendment rights, and in Morris v.
> State, we set forth the test to determine whether such a comment
> results in reversible error.  In Morris, we held that references to a
> defendant's exercise of her Fifth Amendment rights are harmless
> beyond a reasonable doubt and do not require reversal of a conviction
> if, "(1) at trial there was only a mere passing reference, without more,
> to an accused's post-arrest silence, or (2) there is overwhelming
> evidence of guilt."  Today we adopt this test for comments on
> defendant's exercise of Fourth Amendment rights.  Thus, where there

1
2

is only a mere passing reference, without more, to an accused's invocation of Fourth Amendment rights, there is harmless error.

3

Based on the test set forth in Morris, we conclude that in the instant case the district court erred in allowing this testimony. But even assuming that the error was plain, it did not prejudice Sampson's substantial rights. The testimony of the police officers regarding Sampson's refusal to consent to a warrantless search of his residence was no more than a mere passing reference. The officers were asked if they spoke with the defendant, and if so, what the defendant said to them. This was not questioning that was aimed at discussing Sampson's refusal to consent to the warrantless search of his residence. Thus, although the district court erred by allowing this testimony, the error was not prejudicial and does not require reversal of Sampson's conviction.

4
5
6
7
8

9 (Exhibit 100, at pp. 10-14 (footnotes omitted)).

10      First, this Court notes that the United States Supreme Court has not addressed whether the

11 Constitution prohibits a prosecutor from eliciting testimony concerning a defendant's refusal to

12 consent to a search. Absent such guidance, the Nevada Supreme Court was free to adopt a rule of its

13 choosing. Because there is no United States Supreme Court authority that squarely addresses the

14 issue or gives a clear answer to the question presented, the Nevada Supreme Court's decision,

15 including its harmless error analysis, cannot be contrary to, or involve an unreasonable application of

16 United States Supreme Court precedent. *See Carey v. Musladin*, 549 U.S. 70, 77 (2006) (denying

17 habeas relief where "[n]o holding of this Court" addressed the issue presented).

18      Even if the trial court committed an error of constitutional magnitude, such error is subject to

19 this Court's application of the *Brecht* harmless error rule, without regard for the state court's

20 harmless error determination. *Merillo v. Yates*, 663 F.3d 444, 455 (9th Cir. 2011). Petitioner is not

21 entitled to federal habeas relief unless he demonstrates that the error "had a substantial and injurious

22 effect or influence in determining the jury's verdict" under the independent harmless error standard

23 of *Brecht v. Abramson*, 507 U.S. 619, 623 (1993).

24      Petitioner argues that he was prejudiced because, after the State's reference to his invocation

25 of his Fourth Amendment rights, "he was then compelled to explain to the jury why he refused to

26 consent to the search, namely that he had marijuana in his apartment. (ECF No. 44, at p. 35 (citing

23

1   Exhibit 51, at p. 62)).  While petitioner may have been reluctant to ignore the officer's testimony

2   about his statement refusing consent to search his residence, he was not "compelled" to admit to

3   possessing an illegal drug on direct examination, anymore so than he was compelled to take the stand

4   at all.  *See Harris v. New York*, 401 U.S. 222, 225 (1971) ("Every criminal defendant is privileged to

5   testify in his own defense, or to refuse to do so.").  The jury was instructed that "[e]ach charge and

6   the evidence pertaining to it should be considered separately" and that "[t]he fact that you may find a

7   defendant guilty or not guilty as to one of the offenses charged should not control your verdict as to

8   any other offense charged."  (Exhibit 54, Instruction No. 5).  Reviewing courts must presume that a

9   jury followed the instructions it was given.  *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000).

10        Even assuming that the trial court erred in allowing testimony concerning petitioner's

11  refusal to consent to a search of his residence, petitioner is not entitled to federal habeas relief

12  because he has failed to demonstrate that the error "had a substantial and injurious effect or influence

13  in determining the jury's verdict."  *Brecht*, 507 U.S. at 623.  As such, the error was harmless.  *Id.*

14  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was

15  contrary to, or involved an unreasonable application of, clearly established federal law, as

16  determined by the United States Supreme Court, or that the ruling was based on an unreasonable

17  determination of the facts in light of the evidence presented in the state court proceeding.  This Court

18  denies federal habeas relief on Ground Three of the amended petition.

19        **C. Ground Four**

20        Petitioner asserts that his constitutional rights were violated when a police officer testified

21  that he had invoked his rights to remain silent and to an attorney.  (ECF No. 44, at pp. 36-39).  On

22  direct appeal, the Nevada Supreme Court determined that the testimony was erroneously admitted,

23  but that the error was harmless:

24                During trial, Sampson brought a motion for a mistrial based upon the
                  testimony of Detective Castaneda discussing Sampson's invocation of

25                the right to remain silent and to have an attorney.  Detective Castaneda
                  testified that when he arrived at the scene of the crime, he was

26                informed that Sampson had already been detained in a patrol car and

24

that officers and detectives were not speaking with Sampson because he had requested an attorney.  The State apologized for the testimony, argued that it had not elicited the testimony, and offered a curative instruction.  Sampson refused the instruction.  The district court admitted that the comments were error but determined the error to be harmless and denied Sampson's motion for a mistrial.  We agree with the district court that this testimony was error and that such error is harmless.

Whether a prosecutor's comment on a defendant's invocation of his Fifth Amendment rights is reversible error depends on whether "the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be comment on the defendant's [assertion of her Fifth Amendment rights]."  Also, comments concerning the invocation of a defendant's Fifth Amendment rights are only unconstitutional when they are designed to draw a meaning from the silence.  When determining the intended meaning, we view these improper prosecutorial comments in context, and a criminal conviction should not be lightly overturned on the basis of the comments alone.  The same is true for brief testimonial comments.  As discussed, the test for whether a conviction must be overturned is whether there was more than a mere passing reference to the invocation of Fifth Amendment rights.

We conclude that Detective Castaneda's statement was merely a passing reference.  Detective Castaneda's statement was unsolicited by the State, and he testified to the above in response to questions about what he found when he arrived at the scene of the crime and whether he made any contact with the suspect at the time.  Thus, the context of his statement was not designed to draw a meaning from silence and amounted to harmless error.

(Exhibit 100, at pp. 14-15) (footnotes omitted)).

The State's use of a defendant's silence at the time of arrest and after receiving *Miranda* warnings for impeachment purposes can violate due process.  *See Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976).  In the instant case, it is undisputed that Detective Castaneda testified that petitioner invoked his right to remain silent and to have an attorney.  (Exhibit 50, at pp. 94-95).  Petitioner argues that the testimony was prejudicial:  "Since this post-arrest assertion of his constitutional privileges followed on the heels of prior voluntary statements, the timing allowed the jury to infer that his post-arrest silence meant that he was guilty of the crimes for which he was arrested."  (ECF No. 44, at p. 38).  Petitioner is not entitled to federal habeas relief unless he demonstrates that the

1  error "had a substantial and injurious effect or influence in determining the jury's verdict" under the

2  independent harmless error review standard of *Brecht v. Abramson*, 507 U.S. 619, 623 (1993).

3         During the prosecution's direct examination of Detective Casteneda, the following exchange

4  occurred:

5         Q:     What did you find upon your arrival to the scene?

6         A:     By that time arrival, general assignment detectives were already there with parole –
               and – uh – the victim Prince was in the back of a patrol car.  And if I remember right,
7               his mother was also in that patrol car with him.

8         Q:     Did you make any contact with the defendant or the suspect at that time?

9         A:     If I remember correctly he was in another patrol car, and I had been advised by the
               general assignment detectives and officers that he had requested an attorney, so we
10              weren't talking to him.

11  (Exhibit 50, at pp. 94-95).  Following that exchange, a bench conference was held and the prosecutor

12  immediately moved on to other topics.  (Exhibit 50, at p. 95).  At the conclusion of Detective

13  Casteneda's testimony and outside the presence of the jury, defense counsel objected to the

14  testimony and moved for mistrial.  (*Id.*, at pp. 135-36).  The prosecutor apologized for the statement,

15  stated that she did not intend to elicit the comment, and suggested that a curative instruction be given

16  to the jury.  (*Id.*, at p. 136).  The trial court determined that the statement constituted error, but that

17  the error was harmless.  (*Id.*, at p. 138).  During a conference concerning jury instructions, defense

18  counsel declined a curative instruction because he "didn't want to bring it up to their [jurors]

19  attention anymore."  (Exhibit 52, at p. 36).

20         The prosecutor did not ask the witness whether petitioner had invoked his rights to remain

21  silent or to an attorney, nor did she dwell on or ask any follow-up questions concerning the witness'

22  statement.  (Exhibit 50, at pp. 94-95).  Petitioner had the opportunity to benefit from a curative jury

23  instruction, but declined the offer.  (Exhibit 52, at p. 36).  Petitioner has not demonstrated that

24  Detective Castaneda's testimony that petitioner invoked his right to remain silent and to have an

25  attorney "had a substantial and injurious effect or influence in determining the jury's verdict."

26  *Brecht v. Abramson*, 507 U.S. at 623.  As such, the error was harmless.  *Id.*  Petitioner has failed to

26

1  meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an

2  unreasonable application of, clearly established federal law, as determined by the United States

3  Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of

4  the evidence presented in the state court proceeding.  This Court denies federal habeas relief on

5  Ground Four of the amended petition.

6       **D.  Ground Five**

7       Petitioner asserts that his right to the effective assistance of counsel was violated when his

8  trial counsel failed to include Dr. Racoma as an expert witness at trial to testify about the victim's

9  oppositional defiant disorder (ODD).  (ECF No. 44, at pp. 39-44).  Petitioner asserted this claim in

10  his post-conviction state habeas petition.  (Exhibit 102).  Without holding an evidentiary hearing, the

11  state district court denied the petition on January 8, 2007.  (Exhibit 105).  In addressing this claim on

12  appeal from the denial of petitioner's post-conviction habeas petition, the Nevada Supreme Court

13  remanded the case to the state district court for an evidentiary hearing to determine whether trial

14  counsel's failure to include expert testimony on ODD from Dr. Racoma prejudiced petitioner.

15  (Exhibit 126, at pp. 5-6).  On remand and with the assistance of appointed counsel, an evidentiary

16  hearing on the state habeas petition was conducted on June 16, 2008.  (Exhibit 144).  Following the

17  evidentiary hearing, the petition was denied by the state district court.  (Exhibit 161).  On appeal,

18  petitioner raised the claim that his trial counsel was ineffective for failing to present expert testimony

19  on the victim's oppositional defiant disorder.  (Exhibit 165).  The Nevada Supreme Court rejected

20  petitioner's ineffective assistance of counsel claim, finding that petitioner failed to show that he was

21  prejudiced:

22       We conclude that substantial evidence supports the district court's
         finding that appellant failed to demonstrate that he was prejudiced by
23       the failure to present Dr. Racoma's testimony at trial.  At the
         evidentiary hearing, Dr. Racoma testified that persons with ODD act
24       defiant and may lie more often to authority figures, such as parents and
         teachers.  However, Dr. Racoma also testified that he was unaware of
25       anyone with ODD fabricating a story about sexual abuse and could not
         tell if the victim was untruthful regarding his testimony in this case.
26       Further, the victim's testimony at trial was corroborated by evidence

1    found in appellant's home.  In addition, while ODD was not explained
     in detail at the trial, the jury was informed that the victim was
2    prescribed medication for behavioral issues and a doctor who
     examined the victim shortly after the sexual assault was asked if
3    ADHD and ODD could have affected the victim's ability to be
     truthful.  Given this information, appellant fails to demonstrate a
4    reasonable probability of a different outcome had counsel investigated
     and presented Dr. Racoma's testimony concerning the victim's
5    treatment for ODD.  Therefore, appellant fails to demonstrate that the
     district court erred in denying this claim.
6
     Appellant also argues that he was prejudiced by the failure to present
7    Dr. Racoma's testimony because Dr. Racoma could have refuted the
     victim's mother's statement that the victim had only been diagnosed
8    with ADHD.  The victim's mother did not discuss her son's diagnoses
     in detail and appellant fails to demonstrate a reasonable probability of
9    a different outcome had counsel presented testimony to refute her brief
     discussion of the victim's issues.  Therefore, appellant fails to
10   demonstrate that the district court erred in denying this claim.

11   (Exhibit 171, at pp. 2-3).

12        Ineffective assistance of counsel claims are governed by the two-part test announced in

13   *Strickland v. Washington,* 466 U.S. 668 (1984).  In *Strickland*, the Supreme Court held that a

14   petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1)

15   counsel's performance was unreasonably deficient, and (2) that the deficient performance prejudiced

16   the defense.  *Williams v. Taylor,* 529 U.S. 362, 390-391 (2000) (citing *Strickland,* 466 U.S. at 687).

17   To establish ineffectiveness, the defendant must show that counsel's representation fell below an

18   objective standard of reasonableness.  *Id.*  To establish prejudice, the defendant must show that there

19   is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

20   would have been different.  *Id.*  A reasonable probability is "probability sufficient to undermine

21   confidence in the outcome."  *Id.*  Additionally, any review of the attorney's performance must be

22   "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in

23   order to avoid the distorting effects of hindsight.  *Strickland,* 466 U.S. at 689.  It is the petitioner's

24   burden to overcome the presumption that counsel's actions might be considered sound trial strategy.

25   *Id.*

26   *///*

28

1    Ineffective assistance of counsel under *Strickland* requires a showing of deficient

2    performance of counsel resulting in prejudice, "with performance being measured against an

3    'objective standard of reasonableness,'. . . 'under prevailing professional norms.'" *Rompilla v.*

4    *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

5    ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

6    to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

7    5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

8    reasonable professional assistance.  *Id.*

9    The United States Supreme Court has described federal review of a state supreme court's

10   decision on a claim of ineffective assistance of counsel as "doubly deferential."  *Cullen v. Pinholster*,

11   131 S.Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112-113, 129 S.Ct.

12   1411, 1413 (2009)).  In *Cullen v. Pinholster*, the Supreme Court emphasized that: "We take a 'highly

13   deferential' look at counsel's performance . . . . through the 'deferential lens of § 2254(d).'"  *Id.* at

14   1403 (internal citations omitted).  Moreover, federal habeas review of an ineffective assistance of

15   counsel claim is limited to the record before the state court that adjudicated the claim on the merits.

16   *Cullen v. Pinholster*, 131 S.Ct. at 1398-1401.  The United States Supreme Court has specifically

17   reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective

18   assistance of counsel:

19   Establishing that a state court's application of *Strickland* was
     unreasonable under § 2254(d) is all the more difficult.  The standards

20   created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at
     689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117

21   S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in
     tandem, review is "doubly" so, *Knowles*, 556 U.S. at ___, 129 S.Ct. at

22   1420.  The *Strickland* standard is a general one, so the range of
     reasonable applications is substantial.  556 U.S. at ___, 129 S.Ct. at

23   1420.  Federal habeas courts must guard against the danger of equating
     unreasonableness under *Strickland* with unreasonableness under  §

24   2254(d).  When § 2254(d) applies, the question is whether there is any
     reasonable argument that counsel satisfied *Strickland's* deferential

25   standard.

26

29

1   *Harrington v. Richter*, 131 S.Ct. at 788.  "A court considering a claim of ineffective assistance of

2   counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range'

3   of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689).  "The

4   question is whether an attorney's representation amounted to incompetence under prevailing

5   professional norms, not whether it deviated from best practices or most common custom." *Id.*

6   (internal quotations and citations omitted).

7           In the instant case, petitioner argues that he was prejudiced by his trial counsel's failure to

8   present Dr. Racoma's expert testimony because his testimony would have "confirmed Dr. Vergara's

9   testimony that a person with ODD has a tendency to lie" and that he would have testified that the

10  victim "suffered with ODD and that, due to the illness, he would have a greater tendency to lie than a

11  child without the illness." (ECF No. 44, at p. 43).  Petitioner's argument lacks merit.  That Dr.

12  Racoma could have confirmed Dr. Vergara's testimony that a person with ODD may have an

13  increased tendency to lie is of little significance, because such testimony would have been

14  cumulative.  (*See* Exhibit 50, at p. 151) (cross-examination of Dr. Vergara).  While petitioner might

15  have used Dr. Racoma's ODD diagnosis and testimony concerning the victim's medication to

16  challenge the victim's credibility, such a challenge would have little weight, given the evidence

17  corroborating the victim's testimony.  Additionally, such a challenge would have little weight, given

18  Dr. Racoma's admission that he never observed the victim to be untruthful (Exhibit 144, at p. 24),

19  that the purpose of his visits with the victim had nothing to do with whether the victim was truthful

20  (*id.*), that he could not opine whether he victim had lied in this case (*id.*, at p. 50), and that he had

21  never encountered a person with ODD to have fabricated an instance of sexual assault (*id.*, at p. 51).

22  Petitioner has not met the prejudice prong of the *Strickland* standard, because he has not established

23  a reasonable probability that, if Dr. Racoma had testified at trial, the result of the trial would have

24  been different.  *Strickland,* 466 U.S. at 687.  Petitioner has failed to meet his burden of proving that

25  the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of,

26  clearly established federal law, as determined by the United States Supreme Court, or that the ruling

30

1   was based on an unreasonable determination of the facts in light of the evidence presented in the

2   state court proceeding.  This Court denies federal habeas relief on Ground Five of the amended

3   petition.

4   **V.  Certificate of Appealability**

5          District courts are required to rule on the certificate of appealability in the order disposing of

6   a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and

7   request for certificate of appealability to be filed.  Rule 11(a).  In order to proceed with his appeal,

8   petitioner must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th

9   Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v.*

10  *Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial

11  showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C.

12  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate

13  that reasonable jurists would find the district court's assessment of the constitutional claims

14  debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry,

15  the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason;

16  that a court could resolve the issues differently; or that the questions are adequate to deserve

17  encouragement to proceed further. *Id.*  In this case, no reasonable jurist would find this Court's

18  denial of the petition debatable or wrong.  The Court therefore denies petitioner a certificate of

19  appealability.

20  **VI.  Conclusion**

21         **IT IS THEREFORE ORDERED** that petitioner's motion for reconsideration (ECF No. 78)

22  of the Court's dismissal of Ground Six as procedurally barred is **DENIED.**

23         **IT IS FURTHER ORDERED** that the remaining grounds of the amended petition for a writ

24  of habeas corpus are **DENIED**.

25  ///

26  ///

1    **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

2    **APPEALABILITY.**

3

4    **IT IS FURTHER ORDERED** that the Clerk of Court **SHALL ENTER JUDGMENT**

5    **ACCORDINGLY.**

6    DATED this 28th day of March, 2014.

7

8    _____

9    LARRY R. HICKS
     UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26